### ANN M. STILES V. I. JAPHET.

#### No. 3435.

1. **Deed to Wife Conveys to Community, Unless to Her Separate Estate.** It has become not only a rule of decision but a settled rule of property in this State, that all property acquired by the husband and wife during marriage, whether the deed be in the name of the one or the other, upon a consideration deemed valuable in law, is presumed to be community property which the husband may dispose of, and a purchaser under the husband may rely upon this presumption; and the fact that the deed to the property is in the name of the wife alone will not of itself give him notice of her separate claim or right in the property apart from the community, nor even put him upon inquiry.

2. **Construction of Deed.** — A deed conveying land to a married woman, "her heirs and assigns, to her proper use, benefit, and behoof forever in fee simple; and I, ———, do warrant the said land against all troubles, debts, mortgages, and against the lawful claim or claims of all persons whatsoever to the said grantee," does not indicate that it is to the wife's separate estate, nor put a purchaser upon inquiry as to her equities. Although it should convey the legal title to the wife, such title was subject to the statutory rule giving the husband the power to sell it.

3. **Deed from Wife to Husband — Record of Void Deed.** — A deed from a wife to her husband is void and its record affects no one with notice of its contents.

Nor would the fact that the attorney for a purchaser read from the record book the copy of such void deed affect such purchaser unless it formed a link in his chain of title.

4. **Recitations in a Deed.**—If, however, the so-called deed from the wife to her husband had been made known to the purchaser, its contents not claiming the land as her separate property, nor reciting any fact showing her separate interest, it would not affect the purchaser with notice of any secret equity in the wife.

ERROR from Harris. Tried below before Hon. JAMES MASTERSON. The opinion states the case.

*Hutcheson, Carrington & Sears,* for plaintiff in error.—1. In 1846 P. J. Willis made to the plaintiff in error a deed to the land in controversy, the consideration being a negro—her separate property—in which deed the legal title was in plaintiff; and the recitations of the deed put a purchaser upon notice of her separate rights, and she has not done any act of omission or commission by which this title in her, both legal and equitable, could have been divested out of her. Zorn v. Tarver, 57 Texas, 391; Morrison & Hart v. Clark, 55 Texas, 443; Montgomery v. Noyes, 73 Texas, 209.

2. Not only did the language of the deed from Willis to Stiles visit notice upon a prudent man, but the fact that Stiles procured from his wife a deed to himself, and that the other deeds in the chain of title refer to this land as purchased by Ann M. Stiles, were sufficient to show that he treated the property as hers, being himself conscious that it was; and this knowledge on his part is reflected by these acts to his vendees, and charges them with notice. McAfee v. Robertson, 43 Texas, 596; Martel v. Somers, 26 Texas, 560.

3. Whether the deed of Mrs. Stiles to W. W. Stiles was properly of record or not, it was actually inspected by E. P. Hamblen, as counsel for Japhet, and appeared in Japhet's abstract of title, and was as much actual notice as any fact coming to the knowledge of another. The court clearly mistook the distinction between constructive and actual notice. If a party sees a paper in a wastebasket or a mudhole and reads it, it is actual notice; and so if he sees it of record and reads it, whether it was properly of record or not. Wade on Notice, sec. 231; Reneke v. Lee, 48 Mo., 335; Hasking v. Outer, 24 N. H., 481; Murgron v. Brown, 5 Ore., 313.

*E. P. Hamblen,* for defendant in error.—1. The said deed made to Mrs. Stiles in 1846 did not put the legal title to the land in her, she then being a married woman. 1 Sayles' Early Laws, art. 707, sec. 4; Portis v. Parker, 22 Texas, 701.

2. The said deed from Willis to Mrs. Stiles was in the usual form of deeds then in use, and there was nothing in its recitations to put a person on inquiry. Jacobs v. Amyatt, 1 Maddocks, 376; Wills v. Sayers, 4 Maddocks, 409; Kensington v. Dollard, 2 My. and K., 184.

A bequest of a slave to a feme covert, "for her proper use," does not vest in her a separate right: Gilliam v. Welsch, 4 Dev. (N. C.), 286; Tyler v. Lake, 2 Russ. and M., 183, 187; Blacklars v. Laws, 2 Hare, 49.

3. It has been settled by our courts and become a rule of property, that where a deed to the wife fails to show that it is for her separate use, a purchaser from her husband is not affected by unauthorized acts on her part tending to give him authority to sell. Dooley v. Montgomery, 72 Texas, 431.

4. A deed not properly authenticated for registration is not notice. Peters v. Clements, 46 Texas, 122.

Where a deed properly executed and authenticated for registration was placed on record, but the authentication was not recorded, it was held that it did not affect a subsequent purchaser with notice. Taylor v. Harrison, 47 Texas, 458.

MARR, JUDGE, *Section A.*—Mrs. Ann M. Stiles, as a feme sole, brought this action of trespass to try title in the District Court, on April 22, 1890, to recover of the defendant in error, I. Japhet, a certain parcel of land in Harris County which she claimed as her separate property. She was formerly the wife of one W. W. Stiles, and during the continuance of the marriage relation between them the land now in controversy was, on July 22, 1846, conveyed to her by P. J. Willis, for a valuable consideration, and the deed was taken in her name; but she is not described in the deed as the wife of W. W. Stiles, nor is he mentioned therein. There is, however, no recital in the deed that purchase was made with the separate money or property of Mrs. Stiles. Subsequently her husband conveyed the land to her brother, John L. Bryan. This deed was made in February, 1853. Bryan conveyed to William Gammell, and the "sole heir" of the latter conveyed the land to William Buchan and others, and they conveyed it to A. Vomerk, by different deeds, in 1873 and 1874. Vomerk and wife for a valuable consideration conveyed the land to the defendant in error upon the 16th day of May, 1889. Vomerk held actual and undisputed possession of the land from the time of his purchase until he sold to the appellee. It is under the deed from W. W. Stiles to John L. Bryan and the other deeds above mentioned that the defendant in error claims title to the land in dispute. He pleaded that the land was community property, or at least apparently so, and that he purchased the same in good faith, without notice that it had been originally purchased by Mrs. Stiles with her separate means, if such was the fact. There was verdict and judgment in his favor in the court below, and the plaintiff has prosecuted a writ of error.

Her counsel have assigned, in the first place, the following errors:

"The court erred in instructing the jury that the deed made by Willis to Stiles conveyed to Ann M. Stiles property in community with

her husband as between her and parties purchasing without notice; the error consisting: (1) In the fact that the deed upon its face conveyed to her separate property. (2) That if it was not in terms a conveyance of separate property, the terms employed were such as to put a party upon notice, and the court should have so charged the jury. (3) The · court failed to give the correct interpretation of the law, which was, that the deed from P. J. Willis to Ann M. Stiles, followed by a deed from Ann M. Stiles to her husband W. W. Stiles, were such facts as should have put a party upon notice and had them make the inquiry as to what money was paid for the land, and whether it was in fact community or separate, and charged the very reverse of these propositions.''

These assignments may be considered together. The habendum clause in the first deed referred to above, and which is relied upon as sufficient to vest a separate estate in Mrs. Stiles in the land, or at least to put the purchaser upon inquiry, is (including the warranty) to the following effect: ''To have and to hold the said land and premises, with the said improvements, appurtenances, rights, privileges, etc., as herein described, to the said Ann M. Stiles, her heirs and assigns, to her proper use, benefit, and behoof forever in fee simple; and I, the said Peter J. Willis, do warrant the said land against all troubles, debts, mortgages, and against the lawful claim or claims of all persons whatsoever, to the said Ann M. Stiles.''

The other deed, mentioned in the third assignment of error as indicative of notice to the purchaser of the rights of Mrs. Stiles, is one which purports to have been made by her to her then husband W. W. Stiles, on the 5th of February, 1852, to the land in dispute, but was recorded without her privy acknowledgment ever having been taken. This deed, like the other, does not describe the land as her separate property nor recite that it had been purchased with her separate means, nor does it even indicate that the parties were husband and wife. The effect of this deed, as well as the charge of the court in relation thereto, will be considered under another assignment of error.

There is evidence tending to show, that ''the deed from Willis to the plaintiff in error was made in consideration of a sale of a negro, her separate property, sold and invested in said land,'' but none of the deeds in the defendant's chain of title recited this all-important fact. Two of them mentioned the property conveyed, ''as once the homestead of W. W. Stiles, purchased by Ann M. Stiles of Peter Willis.'' This recital, however, plainly does not indicate the separate character of the property and can not amount to any more than the original deed from Willis. In reference to this last deed, the charge of the court was as follows: ''The deed in evidence from Willis to Ann M. Stiles for the land in controversy, if she was then the wife of W. W. Stiles, would, as to third parties purchasing without notice and for a valuable consideration, and without notice of such facts as would put a man of

ordinary caution upon inquiry, be community property, and the husband could convey it without his wife joining in the deed to such purchase. If you find from the evidence that defendant, when he purchased from Vomerk and wife, had no notice of Mrs. Stiles' claim to the land in suit otherwise than by the deed to her from Willis, and that he paid cash for it, or gave negotiable notes which were negotiated to innocent parties, then you will find for the defendant.''

We are of the opinion that this instruction is, under the facts of the case, correct and in accord with the long established doctrine upon the subject in this State. We do not see that it would subserve any useful purpose to review the authorities. The decisions of the Supreme Court are numerous upon the point, and we will cite some of them. Scott v. Maynard, Dall., p. 548; Parker v. Chance, 11 Texas, 513; Cooke v. Bremond, 27 Texas, 457; Kirk v. Navigation Co., 49 Texas, 213; Wallace v. Campbell, 54 Texas, 87; Dooley v. Montgomery, 72 Texas, 429. It has become not only a rule of decision but a settled rule of property in this State, that all property acquired by the husband and wife during marriage, whether the deed be in the name of the one or the other, upon a consideration deemed valuable in law, is presumed to be community property which the husband may dispose of, and a purchaser from or under the husband may rely upon this presumption; and the fact that the deed to the property is in the name of the wife alone will not of itself give him notice of her separate claim or right to the property apart from the community, nor even put him upon inquiry. Authorities supra. But we have been earnestly pressed by counsel not to extend the doctrine announced in Cooke v. Bremond. We have no such inclination nor intention; and unless the language used in the deed from Willis to Mrs. Stiles is of greater significance as indicative of the separate rights of the wife in the property than that employed in the several deeds which were construed in Cooke v. Bremond, Parker v. Chance, Kirk v. Navigation Company, Wallace v. Campbell, and many other analogous cases, it will of course follow that we have not enlarged the doctrine as announced in those cases. A careful analysis of the language of the deed from Willis, which is relied upon by counsel for the plaintiff, leads us to the conclusion that it does not impart to the deed any special character or efficacy. Its legal effect is no more than any ordinary deed, such as is prescribed in the statute, as conveying an estate in fee simple, and does not denote that the land was conveyed to Mrs. Stiles as her separate property to the exclusion of her husband's rights in the property as a part of the community. Rev. Stats., art. 552.

Under the common law, much stronger language has been held in this State to be wholly inadequate to exclude the husband; and while under our system a more liberal rule than that which prevailed at com-

mon law in favor of the husband should doubtless be applied by the courts in cases arising under our own laws, when the language used, by any fair and reasonable interpretation, indicates an intention to confer a separate estate upon the wife, still in this case we do not think that the language of this deed, upon any reasonable construction, manifests any such intention. Nimmo v. Davis, 7 Texas, 31; Vardeman v. Lawson, 17 Texas, 11; Hawkins v. Lee, 22 Texas, 547; 3 Pome. Eq., sec. 1102. Were the question one of first impression, under our laws, which fully recognize the right of the wife to property separate and distinct from her husband, we might reach a different conclusion when the deed is in the name of the wife as in this case; but in order to do so at this late day we would be compelled to overrule the cases first cited and many others, and thus disturb numerous land titles. We say this, because we do not think that the legal import of the deed in hand is materially different from the deeds to the wives in those cases which are cited in the outset. The peculiar phraseology of this deed was shown to have been common to many other deeds made in Harris County. It was used in deeds indiscriminately, from 1852 to 1856.

The word "behoof," upon which special stress seems to be laid, means simply, "use, service, profit, or advantage," and the whole expression occurs frequently in the old form of conveyances. Bouvier; Pars. Laws of Bus. But it does not, without other words, denote a separate and exclusive use or advantage. When a deed is made to the wife to land as a part of the community, it is to her "behoof" as well as to the husband's, for both of them have an equal interest in the common property. The same may be said of an ordinary deed to the wife where the language is "to have and to hold * * * unto the said Mary Brown, her heirs or assigns forever." In other words, the language of either deed is sufficient to create an estate in fee simple, but is not *evidence* of a *separate* right in the wife. Rev. Stats., arts. 551, 552, 2852. We conclude, that as the deed in question neither shows that the property was purchased with her separate funds nor for her separate or exclusive use, it is insufficient upon its face to create a separate estate in her or to put the purchaser upon inquiry.

The last conclusion necessarily results from the first, since if the words used would in this case put upon inquiry, then they would create the separate estate, because they are qualifying words of conveyance, not recitals of the consideration. 4 Kent Com., 468. But counsel for the appellant contend that in any event the deed vested the legal or apparent title in Mrs. Stiles, and therefore was sufficient to give notice of her separate rights. We concede that under the more recent decisions of the Supreme Court this conveyance did have the effect of conferring what is technically termed the legal title as contradistinguished from the equitable, upon Mrs. Stiles, but the estate, as we have

seen, was nevertheless vested in the community by operation of law as to any one who was in fact ignorant of her separate rights. Patty v. Middleton, 82 Texas, 586; Edwards v. Brown, 68 Texas, 329; Hill v. Moore, 62 Texas, 610, q. v. as to the legal title. We do not, therefore, comprehend how the fact that the legal title was in Mrs. Stiles could of itself prevent a purchaser from her husband or under him from being innocent. Although the purchaser saw that she had the legal title, yet he also knew, as a matter of law, that she was merely holding the land in trust for the community, and that under the law the husband could convey the title, as the estate was the common property of both. If he knew that she was the wife of W. W. Stiles *at the time* the deed was made to her by Willis, and was ignorant of the fact that the land had been acquired with her separate funds, then he had the right to rely and act upon the presumption which the statute creates under such circumstances, that the land was common property, and that the husband could dispose of it, even without the assent of the wife.

No question has been raised upon this appeal as to whether the defendant *knew* at the date of his purchase that Ann M. and W. W. Stiles were husband and wife at the time she acquired the deed from Willis, nor was any such issue mooted in the court below. We assume, therefore, that the fact is not disputed, otherwise the learned counsel for the plaintiff would doubtless have requested an instruction upon the point. As the questions are presented, we find no error in the charge of the court before quoted.

The second and last assignment of error to be considered is as follows:

"The court erred in instructing the jury that the deed from Ann M. Stiles to W. W. Stiles, which the evidence showed was read by E. P. Hamblen, attorney for the defendant in the purchase of the property, did not, in connection with the deed from Willis, impart notice to purchasers of the separate character of the property in Ann M. Stiles, or put them on inquiry, which if prosecuted could have shown it was paid for by her separate money."

We have in a former part of this opinion described the nature of this deed. The evidence does *not* show that Mr. Hamblen read the deed *itself* as stated in the assignment, but does show that he read the *record* of the so-called deed. Both the deed and its record were absolutely void, because the wife had not acknowledged it, and because she had no authority to make such a deed to her husband during coverture. While the instrument purports to be an indenture, it is signed by the wife alone. It recites a consideration, as it appears of record, of $1000, "paid by the party of the second part" (W. W. Stiles), but nowhere in the instrument is the land described or referred to as the separate property of Mrs. Stiles. We think that the *void* record of a *void* deed,

even when read by the defendant or his attorney in the matter, was not notice, either actual or constructive, of the contents or existence of the *original* deed, unless it had been further shown that the party claimed title under such deed. Of course, if he had in fact examined the original deed itself, he would have been bound to take notice of its legal effect and import, whatever that might be, whether it was duly recorded or not. Peters v. Clements, 46 Texas, 122; Taylor v. Harrison, 47 Texas, 458; Robertson v. Guerin, 50 Texas, 323; Gaston v. Dashiell, 55 Texas, 516. The defendant, however, did not introduce this deed at the trial nor rely upon it, though it appears that his attorney had made a note of its record in the abstract of title prepared by him for the defendant prior to his purchase. The attorney submitted the abstract to the defendant, and advised him that the deed was void but that the title was good. The defendant does not claim under the deed, but under an independent right and title in the husband, as already explained. But if we were to concede that the record of this pretended deed when read by the attorney was notice of the original to the defendant, still we do not think that this would affect the question in the slightest degree. The defendant in that contingency was simply notified that Mrs. Stiles had made a void deed to her husband. It contains not a single word, recital, or expression which could have informed him that the land which she had attempted to convey was her separate property. It conveys no more intelligence upon this subject than the deed from Willis. The presumption upon the part of the defendant was natural, that she was trying to convey her interest in the land as a part of the community to her husband, however useless or futile that may have been; for the defendant knew, or at least believed, that she had acquired the land in the first instance as *community* property, and he knew of nothing that had changed its character in the meantime. The court below did not, in our opinion, misdirect the jury as to the effect of the *record* of this deed, or of the deed itself, a copy of which from the record was put in evidence by the plaintiff.

The judgment should be affirmed.

*Affirmed.*

Adopted March 22, 1892.

Hobby, P. J., did not sit in this case.