### UNITED STATES v. DALLAS NAT. BANK et al.

No. 11196.

Circuit Court of Appeals, Fifth Circuit.

Dec. 19, 1945.

Rehearing Denied Jan. 18, 1946.

Homer R. Miller and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and A. W. Christian, Asst. U. S. Atty., of Dallas, Tex., for appellant.

J. L. Lipscomb, Wm. A. Blakley, and Hoyet A. Armstrong, all of Dallas, Tex., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Mrs. Carolyn C. Maxwell, a resident of England, earned, during the years 1931, 1934, and 1935, income and profits on stock market transactions in the State of New York as reflected by her account with her brokers, G. M. P. Murphy & Company, of New York City. She failed to make returns of her income from these profits. On July 8, 1937, after obtaining information from her as to the costs and dates of purchase of certain stocks, the Internal Revenue Agent in charge of the Second District of New York mailed to her the usual thirty-day letter informing her of the deficiencies. Upon receipt of the field examination report from such Agent, the Commissioner of Internal Revenue filed, in the Second District of New York, income tax returns for the taxpayer for each of the years in question. After sending her the usual notice with statement of the deficiencies and receiving no reply, the Commissioner assessed the deficiencies against taxpayer and transmitted the assessment list to the Collector of the Second District of New York, who, in turn, mailed to her two notices of demand for payment.

No payment having been made, the Government, in 1944, filed suit in the United States District Court for the Northern District of Texas seeking to establish and have declared a lien on taxpayer's interest in a trust estate created under the will of Mrs. Belle Shumard and administered by the Dallas National Bank, as trustee. Under the terms of the will [1] the taxpayer did not have the legal title to the corpus of the trust, nor did she have the use, possession, or the right to the possession of such corpus, but she received net income therefrom amounting to approximately $54 per month.

A copy of the complaint and a copy of the order to appear in said suit were served upon Mrs. Maxwell through the United States Consul's office in England.

The Trustee Bank has withheld payments to taxpayer since the filing of the suit.

As stated by the Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035, "state law creates legal interests and rights," therefore, whether or not the cestui que trust here has been given any property or rights thereto in the trust which may be subjected to lien, must be determined by the law of Texas.

42 Tex.Jur. § 27, page 628, states that "the extent of the beneficiary's interest is determined by interpretation of the settlor's language." Mrs. Shumard devised her Main Street property in Dallas, Texas, to her executor and trustee, in trust for taxpayer and other named beneficiaries, "the net revenues" of the trust property to be distributed to the beneficiaries each month. Therefore, Mrs. Maxwell has not the title to the corpus of the trust, but is to

---

[1] "I will, devise and bequeath to my said Executor and Trustee my Main Street, Dallas, Texas, property, now occupied by° Central State Bank, located between Akard and Stone Streets of said City, but In Trust for the beneficiaries hereinafter named, for and during the life of my said son, Malnor A., my three above-named granddaughters [Isabel Carden Griffin, Saline Carden Hulings and Carrie Carden Maxwell], and my said adopted daughter, and until the death of the last survivor of them,—and during the period of the trust the Trustee shall have full power of possession, control, and management of this property, and shall, by the use of all reasonable diligence, keep the same leased and in good condition so that the greatest amount of revenue practicable may be derived therefrom, and the net revenues thereby derived shall be distributed among the beneficiaries as hereinafter provided.

* * * * * * * *

"And one-third of said net revenues shall be paid in equal proportions to my above-named granddaughters,—the sole heirs of my deceased daughter, Carrie Shumard Carden,—share and share alike,—during their respective lives; * * *"

"Prior to such payment or delivery by the Trustee to the beneficiary, no such rights, estates, corpus or income shall be subject to any legal seizure, levy, sale or other administration or liquidation through or under any action, suit writ, probate, bankruptcy or other proceedings, against any such beneficiary, or against the property of any such beneficiary. In no event shall the Trustee pay or deliver any money or other property, or account, to anyone claiming through or under any such beneficiary, in violation of the terms of this Codicil."

receive only a proportionate part of the net revenues.

■ Although the testatrix intended to create an estate which would not be subject to seizure, sale, or execution for debts of any kind or character by placing such restraint upon the corpus and income, and such provisions in a will are valid under the Texas law and are respected by the courts,[2] this would not prevail against the fastening of a lien by the Federal Government for unpaid taxes on any property owned by the delinquent taxpayer.

■ We held in Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, that the provision of the Texas Constitution exempting homesteads from forced sale did not operate to exempt a Texas homestead from a sale to satisfy a federal income tax lien. Having been enacted within the scope of the power delegated to the Federal Government, the Internal Revenue statutes are a part of the supreme law of the land. If they are in conflict with State law, constitutional or statutory, the latter must yield.

■ The provisions of the will of an individual which seek to exempt from debts property bequeathed for the benefit of another cannot rise higher than a statutory or constitutional exemption provided by a State.

■ Mrs. Maxwell has no title to the corpus of any property other than the profits after they have accrued and have been passed to her account and made available to her by the Trustee. In other words, after "the net revenues," amounting to approximately $54 per month, accrue, or are set apart and become payable to her, such net revenues then belong to her and are then subject to the lien of the Government for taxes, and are available as an appropriate res in a proceeding in rem by the Government to have a lien for delinquent taxes declared and enforced against such revenues.

The Government is entitled to a lien upon these monthly payments of net revenue in the hands of the Trustee, by virtue of the law as stated in 26 U.S.C.A. Int.Rev. Code, §§ 3670 and 3671.[3]

■ Under the holding of Glass City Bank of Jeanette, Pa. v. United States of America, 66 S.Ct. 108, that the lien of the United States attaches to after-acquired property, we think that such lien will continue to be fastened on the monthly income from the trust as it becomes payable to the taxpayer.

The District Court held that there had been no valid service upon the taxpayer in London, England, because there is no statutory right for a substituted service upon such an inchoate property interest as she had in the trust estate

■ Sec. 57 of the Judicial Code, Title 28 U.S.C.A. § 118, provides that when in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant or found within said district, it shall be lawful for the court to make an order directing such absent defendant to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be.

As heretofore stated, a certified copy of the complaint and order for service were served upon the taxpayer through the office of the United States Consul at London. The Trustee was properly served with process, and the Court had jurisdic-

---

[2] The law of Texas is stated in 42 Tex. Jur. § 92, page 705, as follows:

"The courts of Texas, and of many other states of the Union, give effect to an express or implied restraint on anticipation, thereby preventing the cestui's interest in the trust property from being reached by his creditors through any process of law or equity, as well as preventing voluntary alienation."

[3] "§ 3670. Property subject to lien

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States, upon all property and rights to property, whether real or personal, *belonging* to such person." (Emphasis added.)

"§ 3671. Period of lien

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

tion of such of the res in the Trustee's hands as belonged to the taxpayer. Any accruals of net revenues belonging to the taxpayer were sufficient for this purpose. It is not the quantity, but the actuality, of the res within the Court's jurisdiction that is of consequence.

Although the legal title to the corpus of the trust estate is not in the taxpayer, and the corpus is not subject to alienation by her or to execution or levy by her creditors, nevertheless, it cannot be said that she has no rights whatsoever in the corpus of the property of the trust estate in the hands of the Trustee. We think that such rights, although inchoate, unvested, and unenforceable, together with such net monthly revenues as are accrued and unpaid to her, are sufficient to support a proceeding in rem to test the question of whether or not taxpayer's interest in such res is subject to a lien for delinquent taxes due the Government. Without doubt, she has some sort of an equitable, even though untouchable, interest in the corpus of the trust estate.

The taxpayer seeks to avoid the suit, and the lower Court sustained her contention, by saying she could be proceeded against only through the Collector at Baltimore, Maryland, relying upon the provisions of 26 U.S.C.A. Int.Rev.Code, § 53(b) (1).[4]

 We do not regard this provision as either jurisdictional or mandatory. It is directory only. Under this statute a non-resident alien is directed to file his return at his principal place of business in the United States if he has one, or with the Collector at Baltimore. The principal place at which the business of the taxpayer was transacted in the United States was the office of G. M. P. Murphy & Company, in New York, through whose office the investments yielding her unreported income were made, and it was lawful for the return to be filed there. Mrs. Maxwell failed to file a return for the three years in question, either in Baltimore or elsewhere, and she cannot insist upon the privilege of having her income tax liabilities determined by the Collector at Baltimore after having failed or refused for three years to file returns with such Collector for such purpose.

Under the facts and circumstances of this case, we think that the tax was lawfully determined and imposed, and that the United States has a valid lien for the unpaid taxes for the years in question.

 The Government has a right to file suit and have a lien for delinquent income taxes declared upon any property belonging to such taxpayer in a District Court of the United States in any district in which such property is located, without regard to the place of residence of the taxpayer, the place to which his taxes were returnable, or the place at which the income was earned. The appropriate situs for a suit to establish a lien upon property is in the court of the district in which the property is located.

The judgment of the lower Court is reversed for further proceedings conformable to the views herein announced.

Reversed and remanded.

---

[4] 26 U.S.C.A. Int.Rev.Code, § 53(b) (1): "Returns (other than corporation returns) shall be made to the collector for the district in which is located the legal residence or principal place of business of the person making the return or, if he has no legal residence or principal place of business in the United States, then to the collector at Baltimore, Maryland."